No. 26-1253

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

JOSE RIVERA,
*Plaintiff - Appellant,*
v.
DEPARTMENT OF JUSTICE; LEAH BELAIRE FOLEY, United States Attorney for the District of Massachusetts,
*Defendants - Appellees.*

*On Appeal from the United States District Court for the District of Massachusetts*
*Hon. Mark G. Mastroianni, District Judge, Case No. 3:24-cv-30111-MGM*

# BRIEF OF THE MASSACHUSETTS ASSOCIATION OF CRIMINAL DEFENSE LAWYERS AS AMICUS CURIAE IN SUPPORT OF PLAINTIFF-APPELLANT AND REVERSAL


Alexandra Arnold (No. 1205706)
MASSACHUSETTS ASSOCIATION OF CRIMINAL DEFENSE LAWYERS
One Financial Center, Suite 1120
Boston, Massachusetts 02111
(617) 481-0606

Michael T. Packard (No. 1146175)
William H. Locke (No. 1220427)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, Massachusetts 02199
(617) 712-7100

*Counsel for Amicus Curiae*
*Massachusetts Association of Criminal Defense Lawyers*


November 13, 2026

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1 and 29(a)(4)(A), the Massachusetts Association of Criminal Defense Lawyers states that it is an incorporated, non-profit association. It has no parent corporation, and no publicly held corporation owns 10 percent or more of its stock.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE .......... 1

SUMMARY OF ARGUMENT ...................................................................... 3

ARGUMENT ............................................................................................... 5

I. THE COMPULSORY PROCESS CLAUSE REACHES DOCUMENTARY EVIDENCE ........................................................ 5

A. The Clause's Text And History Protect The Production Of Papers ......................................................................................... 5

B. The Earliest Construction Of The Clause Rejected The District Court's Distinction ............................................................ 8

C. Later Decisions Confirm That Documents Are Within The Constitutional Guarantee .................................................... 12

D. State Courts Consistently Recognize That The Guarantee Reaches Documents ......................................................... 14

II. THE DISTRICT COURT'S REASONING RELIED ON A FAULTY UNDERSTANDING OF THE RELEVANT AUTHORITIES .................... 16

A. The Supreme Court Reserved The Compulsory Process Question In *Ritchie* ...................................................................... 17

B. This Court Has Not Decided Whether The Clause Reaches Documents ..................................................................................... 20

CONCLUSION .......................................................................................... 22

CERTIFICATE OF COMPLIANCE ............................................................ 1

CERTIFICATE OF SERVICE ..................................................................... 2

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Amey v. Long*,
9 East 473, 103 Eng. Rep. 653 (K.B. 1808) ....................7

*Brady v. Maryland*,
373 U.S. 83 (1963)....................19

*Braham v. State*,
571 P.2d 631 (Alaska 1977) ....................15, 16

*Commonwealth v. Davis*,
543 Pa. 628 (1996)....................15

*Commonwealth v. Lloyd*,
523 Pa. 427 (1989)....................15

*Commonwealth v. Matis*,
446 Mass. 632 (2006) ....................13, 16

*Commonwealth v. Mitchell*,
444 Mass. 786 (2005) ....................13

*Davies v. State*,
198 Md. App. 400 (2011) ....................15

*In re Farber*,
78 N.J. 259 (1978) ....................15

*In re Martin Marietta Corp.*,
856 F.2d 619 (4th Cir. 1988) ....................13

*Pennsylvania v. Ritchie*,
480 U.S. 39 (1987).................... 4, 11, 16, 17, 18, 19, 20

*People ex rel. Fisher v. Carey*,
77 Ill. 2d 259 (1979) ....................14

*People v. Hendrix*,
12 Misc. 3d 447 (Sup. Ct. 2006)....................14

*People v. Sauls*,
2022 IL 127732 ........ 14

*Puerto Rico v. United States*,
490 F.3d 50 (1st Cir. 2007) ........ 1

*State v. McFarland*,
2026 WL 699932 (Ohio Ct. App. Mar. 12, 2026) ........ 15

*State v. West*,
250 Or. App. 196 (2012) ........ 15, 16

*Taylor v. Illinois*,
484 U.S. 400 (1988) ........ 7

*Trump v. Vance*,
591 U.S. 786 (2020) ........ 4, 8, 12

*United States ex rel. Touhy v. Ragen*,
340 U.S. 462 (1951) ........ 1

*United States v. Burr*,
25 F. Cas. 30 (C.C.D. Va. 1807) (No. 14,692d) ........ passim

*United States v. Crater*,
93 F.4th 581 (1st Cir. 2024) ........ 8, 20, 21

*United States v. Filippi*,
918 F.2d 244 (1st Cir. 1990) ........ 20

*United States v. Hoffman*,
832 F.2d 1299 (1st Cir. 1987) ........ 20

*United States v. Hubbell*,
530 U.S. 27 (2000) ........ 5, 6, 11

*United States v. Levy-Cordero*,
67 F.3d 1002 (1st Cir. 1995) ........ 20, 21

*United States v. Levy-Cordero*,
156 F.3d 244 (1st Cir. 1998) ........ 21

*United States v. McGrady*,
508 F.2d 13 (8th Cir. 1974) .......... 14

*United States v. Nixon*,
418 U.S. 683 (1974) .......... 12, 17

*Washington v. Texas*,
388 U.S. 14 (1967) .......... 5

**Constitutional Provisions**

U.S. Const. amend. V .......... 20

U.S. Const. amend. VI .......... passim

Mass. Const. pt. 1, art. XII .......... 16

Mass. Decl. of Rights pt. 1, art. XII (1780) .......... 7

N.H. Const. pt. 1, art. 15 .......... 16

Va. Const. art. I, § 8 .......... 16

Va. Decl. of Rights § 8 (1776) .......... 7

Vt. Const. ch. I, art. 10 .......... 16

**Statutes, Regulations, and Rules**

Act of May 31, 1718,
ch. 236, § 4, 1 Laws of Pennsylvania 112 (J. Bioren ed. 1810) .......... 6

Fed. R. App. P. 29(a)(3) .......... 2

Fed. R. Crim. P. 17(c) .......... 12

Mass. R. Crim. P. 17 .......... 13, 16

28 C.F.R. § 16.22(a) .......... 1

## Other Authorities

16 Annals of Cong. (1807)........................................................................................8

Russell D. Covey, *Manufacturing False Convictions: Lies and the Corrupt Use of Jailhouse Informants*, 96 U. Colo. L. Rev. 131 (2025)..........................................................................2

T. Cunningham, *New and Complete Law-Dictionary* (2d ed. 1771)....................5, 6

Giles Jacob, *The Law-Dictionary* (T. Tomlins ed. 1797)........................................6

Giles Jacob, *The Law-Dictionary* (T. Tomlins 1st American ed. 1811) ..................6

Giles Jacob, *A New Law-Dictionary* (8th ed. 1762) ................................................5

John Kersey, *A New English Dictionary* (1702).......................................................6

Mass. Conviction Integrity Working Grp., *Conviction Integrity Programs: A Guide to Best Practices for Prosecutorial Offices* (2021)..........................................................................................................2

Thomas Potts, *A Compendious Law Dictionary* (1803) ..........................................5

Anna VanCleave, *The Right to Inter-Sovereign Disclosure in Criminal Cases*, 2013 Wis. L. Rev. 1407.......................................................1

Noah Webster, *An American Dictionary of the English Language* (1828)..........................................................................................................6

Peter Westen, *Compulsory Process II*, 74 Mich. L. Rev. 191 (1975)....................11

Christine Wong, Note, *Derivative Prohibition: Defending Compulsory Process in State Prosecutions*, 82 Geo. Wash. L. Rev. 247 (2013)...............................................................1

## STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE

The Massachusetts Association of Criminal Defense Lawyers ("MACDL") is an incorporated, non-profit association whose members represent people accused of crimes in Massachusetts. MACDL champions the constitutional rights of the accused, seeks to eradicate flaws, inequities, and systemic racism in the criminal legal system, and works to ensure that everyone facing prosecution in Massachusetts has access to vigorous, effective, and just representation.

When the evidence a defendant needs is held by a federal agency, state process cannot reach it. Sovereign immunity prevents a state court from enforcing a subpoena against the federal government. A defendant denied agency records must seek federal review under the Administrative Procedure Act ("APA"). *See Puerto Rico v. United States*, 490 F.3d 50, 61 n.6 (1st Cir. 2007). Department of Justice employees generally may not produce records in litigation to which the United States is not a party without approval under the Department's regulations. 28 C.F.R. § 16.22(a); *see United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951). State defendants encounter these barriers regularly, because federal investigations often generate information relevant to state prosecutions. *See* Anna VanCleave, *The Right to Inter-Sovereign Disclosure in Criminal Cases*, 2013 Wis. L. Rev. 1407, 1410-11; Christine Wong, Note, *Derivative Prohibition: Defending Compulsory Process in State Prosecutions*, 82 Geo. Wash. L. Rev. 247, 248-50 (2013).

The problem is particularly acute when, as here, the prosecution's key witness is a jailhouse informant who claims the defendant confessed to him. Such accounts are rarely subject to corroboration, and effective impeachment often depends on records of the informant's prior cooperation with and benefits received from law enforcement—including federal authorities. *See* Russell D. Covey, *Manufacturing False Convictions: Lies and the Corrupt Use of Jailhouse Informants*, 96 U. Colo. L. Rev. 131, 169-71 (2025). Investigating agencies, not prosecutors, often hold those records. *See* Mass. Conviction Integrity Working Grp., *Conviction Integrity Programs: A Guide to Best Practices for Prosecutorial Offices* 47 (2021).

Here, however, the district court shielded all such materials from the Compulsory Process Clause, regardless of their importance to the defense. (Add. 6).[1] That ruling leaves defendants no constitutional means to compel production of material evidence, even exculpatory evidence.

MACDL submits this brief with its renewed motion for leave to file. *See* Fed. R. App. P. 29(a)(3). No party's counsel authored this brief in whole or in part, and no party, party's counsel, or person other than MACDL, its members, or its counsel contributed money intended to fund its preparation or submission.

[1] "Add." refers to the addendum to Appellant's opening brief, and "App." refers to the Record Appendix.

## SUMMARY OF ARGUMENT

The Sixth Amendment's guarantee of compulsory process reaches a witness's papers as surely as his words—as the Compulsory Process Clause's text, history, and earliest judicial construction all agree. *See United States v. Burr*, 25 F. Cas. 30, 34-35 (C.C.D. Va. 1807) (No. 14,692d). But the district court held that the Clause "applies only to witness testimony" and rejected Mr. Rivera's claim "because he sought documents rather than witness testimony." (Add. 6). That erroneous ruling has an immediate and harmful implication: defendants who need records held by a federal agency have no compulsory process claim to secure them, no matter how important they are to the defense. That ruling also makes little sense: under it, the Clause would guarantee a custodian of record's appearance at trial but *not* production of the material records he was summoned to bring.

The Compulsory Process Clause guarantees process for obtaining "witnesses," a term understood at the founding to mean anyone who furnishes evidence, whether by testifying *or* producing documents. Analogous and contemporaneous state guarantees likewise protect the accused's right to call for "evidence" and to produce "proofs," all of which include writings. A subpoena *duces tecum* implements that right by requiring a witness to bring papers in her custody. That right to obtain evidence does not vanish if the evidence is on paper.

In 1807, in the trial of Aaron Burr, the circuit court rejected precisely that distinction. There, the prosecution conceded that the President could be summoned as a witness but disputed whether he could be required to bring documents. The court held that the right to compel a witness's attendance extended to papers material to the defense. 25 F. Cas. at 34-35. The Supreme Court has repeatedly recognized that construction, including in at least one recent case. *See Trump v. Vance*, 591 U.S. 786, 795-96 (2020). Admittedly, in one case the Court declined to decide "whether and how" the compulsory process guarantee differs from due process—because it did not need to do so there, since due process supplied a sufficient framework for deciding the defendant's request. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 55-58 (1987). Critically, however, the Court has never held that documents fall outside the Sixth Amendment, thus leaving *Burr* undisturbed.

Mr. Rivera sought the same process recognized in *Burr*: a summons directing a keeper of records to bring documents to his criminal trial. (App. 20, 34). The Department's lack of a disclosure duty as a non-prosecuting agency does not answer his claim, because compulsory process concerns the defendant's own efforts to obtain evidence. Whether he established a constitutional entitlement to those particular records is a different question—one the district court did not reach in resolving his compulsory process claim. (Add. 5-6).

## ARGUMENT

## I. THE COMPULSORY PROCESS CLAUSE REACHES DOCUMENTARY EVIDENCE

The Sixth Amendment guarantees the accused "compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. That guarantee protects the accused's ability to obtain evidence and present a defense. *See Washington v. Texas*, 388 U.S. 14, 19 (1967). It encompasses witnesses summoned to recount events and those summoned to produce papers. The district court's contrary rule fails for four reasons. ***First***, the original meaning of "witnesses" encompassed documentary evidence. ***Second***, the earliest judicial construction of the Clause, in *Burr*, rejected the very distinction the district court drew here. ***Third***, since *Burr*, the Supreme Court and other courts have treated documentary evidence as within the Clause's ambit. ***Fourth***, state courts construing both the Sixth Amendment and their own constitutions have reached the same conclusion, and several state constitutions secure the right in terms that encompass documents on their face.

### A. The Clause's Text And History Protect The Production Of Papers

The word "witnesses" does not confine compulsory process to oral testimony. Legal dictionaries of the founding era defined a witness as one who "gives evidence in a cause." *United States v. Hubbell*, 530 U.S. 27, 50 (2000) (Thomas, J., concurring) (citing 2 Giles Jacob, *A New Law-Dictionary* (8th ed. 1762); 2 T. Cunningham, *New and Complete Law-Dictionary* (2d ed. 1771); Thomas Potts, *A*

*Compendious Law Dictionary* 612 (1803); 6 Giles Jacob, *The Law-Dictionary* 450 (T. Tomlins 1st American ed. 1811)). The same dictionaries defined evidence to include writings. Evidence "signifies generally all proof, be it testimony of men, records or writings," *id.* at 51 n.2 (quoting 1 T. Cunningham, *New and Complete Law-Dictionary* (2d ed. 1771)), and consisted of "[p]roof by testimony of witnesses, on oath; or by writings or records," *id.* (alteration in original) (quoting 1 Giles Jacob, *The Law-Dictionary* (T. Tomlins ed. 1797)). General dictionaries used the term the same way. A witness was "a giver of evidence," *id.* at 50 (quoting John Kersey, *A New English Dictionary* (1702)), and "[t]hat which furnishes evidence or proof," *id.* (quoting Noah Webster, *An American Dictionary of the English Language* (1828)). On that understanding, a person who supplied a document in response to a subpoena furnished evidence and was a witness. Thus, the distinction between a subpoena to testify and a subpoena to produce papers concerned what kind of evidence the witness supplied, not whether she was a witness. *See id.* at 50.

Legal practice reflected the same usage. A Pennsylvania statute of 1718 addressing the compulsion of witnesses spoke of those who might be deposed "or give any manner of evidence." *See id.* at 54 n.4 (quoting Act of May 31, 1718, ch. 236, § 4, 1 Laws of Pennsylvania 112 (J. Bioren ed. 1810)). In 1808, the Court of King's Bench held that a subpoena *duces tecum* imposed a compulsory legal obligation. It explained that "[t]he right to resort to means competent to compel the

production of written, as well as oral testimony seems essential to the very existence and constitution of a Court of Common Law, which receives and acts upon both descriptions of evidence." *Amey v. Long*, 9 East 473, 484, 103 Eng. Rep. 653, 658 (1808 WL 1848) (KB 1808). Neither source treated a person who produced papers as anything other than a witness.

Contemporaneous state declarations of rights confirm that understanding. Virginia secured the accused's right "to call for evidence in his [favor]." Va. Decl. of Rights § 8 (1776). Massachusetts guaranteed the right "to produce all proofs, that may be favorable to him." Mass. Decl. of Rights pt. 1, art. XII (1780). Those guarantees addressed "evidence" and "proofs," and both terms include writings.

The Clause should be read in light of those sources. Its scope must extend beyond the bare power to summon a person into court. *See Taylor v. Illinois*, 484 U.S. 400, 407-09 & 408 n.13 (1988). Indeed, the Supreme Court has rejected a reading limited to subpoena power in favor of "the broader reading reflected in contemporaneous state constitutional provisions." *Id.* at 408. Further, a rule that permits a defendant to summon a custodian but excludes the papers the custodian holds would be absurd—it would protect the form of process while withholding the only thing that makes the process useful.

To establish a violation of the Clause, this Court requires an act or omission attributable to the sovereign that causes the loss or erosion of testimony both material

to the case and favorable to the accused. *See United States v. Crater*, 93 F.4th 581, 589 (1st Cir. 2024). In *Crater*, this Court applied that formulation to subpoenas for federal agents' testimony. *See id.* at 589-90. The key question is whether documentary evidence is categorically excluded from that right. And the Clause's text and history provide the answer—***no***.

### B. The Earliest Construction Of The Clause Rejected The District Court's Distinction

In *Burr*, the court held that the right to compel a witness's attendance includes the right to require the witness to bring papers material to the defense. 25 F. Cas. at 34-35. That ruling arose from a contest over executive papers. Aaron Burr (the former Vice President) was tried for treason in 1807 in the federal circuit court in Richmond, where Chief Justice Marshall presided as Circuit Justice. *See Vance*, 591 U.S. at 793-95 (recounting the case). The charges followed accusations by General James Wilkinson, who had "sent a series of letters to President Jefferson accusing Burr of plotting to attack New Orleans and revolutionize the Louisiana Territory." *Id.* at 794. In a special message to Congress, the President relied on Wilkinson's letters in pronouncing Burr's guilt "beyond question." *Id.* (quoting 16 Annals of Cong. 39-40 (1807)). The court later described Wilkinson as the person "declared to be the essential [witness]" against Aaron Burr. 25 F. Cas. at 36.

Before trial, Burr asked the court for a subpoena *duces tecum* directed to the President. He sought Wilkinson's letter of October 21, 1806, which the President

had cited in his message to Congress, together with military orders "issued respecting" him. *Id.* at 30. Burr explained that the government had "attempted to infer certain intentions on [his] part from certain transactions," and so it was necessary "that these transactions should be accurately stated." *Id.* He had first sought the naval order from Robert Smith in Washington, without success, and only then asked the court for compulsory process. *Id.* The prosecution conceded that an ordinary subpoena could issue to the President but asserted that a subpoena requiring documents could not. *Id.* at 34. The dispute thus presented the exact distinction the district court adopted here.

The court found no basis for drawing a division between testimony and documents. A subpoena *duces tecum*, the court explained, "varies from an ordinary subpoena only in this; that a witness is summoned for the purpose of bringing with him a paper in his custody." *Id.* at 35. The custodian remained a witness, and the paper was the evidence the witness was summoned to provide. Whether the paper could properly be introduced depended on its character, not the identity of its custodian. *Id.* at 34. Accordingly, "any person" subject to an ordinary subpoena could also be directed to bring material papers. *Id.* at 34-35.

The constitutional conclusion followed:

> This court would certainly be very unwilling to say that upon fair construction the constitutional and legal right to obtain its process, to compel the attendance of witnesses, does not extend to their bringing with them such papers as may be material in the defen[s]e. The literal distinction which exists between the cases is too much attenuated to be countenanced in the tribunals of a just and humane nation.

*Id.* at 35. Thus, the right to summon a witness pursuant to the Clause was held to include a right to the material papers in that witness's possession.

The court also addressed the function of the requested evidence, recognizing that a defendant may need a prosecution witness's prior statements to challenge that witness's account, and must obtain those statements in time to use them. *Id.* at 36. Burr himself sought a letter from the person identified as an essential witness against him. *Id.* Mr. Rivera likewise sought records concerning Efraim Morales, who allegedly reported that Mr. Rivera had confessed to him in jail. His request concerned Mr. Morales's cooperation with the U.S. Attorney's Office and whether that relationship influenced his account. (App. 32-33; *see* App. 10-11). The use of documents to test a prosecution witness's testimony is therefore part of the historical practice at issue, not a modern expansion of the Clause.

Nor did the court in *Burr* rest its ruling only on the statute providing process to defendants charged with capital offenses. It considered both the constitutional and statutory protections, and grounded the availability of process in longstanding

practice and the Constitution. 25 F. Cas. at 33. Its conclusion concerning documents followed from the nature of the process itself. *Id.* at 34-35. The Supreme Court has accordingly treated the ruling in *Burr* as a construction of the compulsory process right. *See Ritchie*, 480 U.S. at 55; *Hubbell*, 530 U.S. at 54-55 (Thomas, J., concurring). Scholarship on the Clause reads *Burr* the same way. *See, e.g.*, Peter Westen, *Compulsory Process II*, 74 Mich. L. Rev. 191, 303 (1975) (describing Justice Marshall's judgment that compulsory process "includes the right to produce evidence in documentary form" as one that "has never been questioned").

Mr. Rivera invoked that same process. The U.S. Attorney's Office in Springfield received a Superior Court subpoena directing its keeper of records to appear at trial and produce records of "any communication with or regarding Efraim Morales." (App. 20). After the Office invoked sovereign immunity and pointed to the *Touhy* procedure, counsel sent the Office a revised version of the summons, addressed to the "Keeper of the Records" and directing the keeper to "bring with you" those records, and later resent it with her written request to the Department. (App. 20-21, 32-34, 46). The requested evidence did not cease to be the subject of compulsory process because the witness was a keeper of records or because obtaining the records required an agency request followed by APA review. Whether that procedure ultimately affords Mr. Rivera relief is a separate question from whether the Clause covers the evidence he sought.

### C. Later Decisions Confirm That Documents Are Within The Constitutional Guarantee

The Supreme Court has continued to recognize the constitutional significance of compelled documentary evidence. The right to production of evidence at a criminal trial has constitutional dimensions, including those supplied by the Sixth Amendment. *See United States v. Nixon*, 418 U.S. 683, 709, 711 (1974). In *Nixon*, the Court considered a prosecutor's subpoena for presidential recordings and documents, but it expressly addressed the need for compulsory process for the defense too. *Id.* at 709. Nothing in its reasoning supports excluding the defense's documentary evidence from the Clause.

More recently, the Court again recognized that the Sixth Amendment guarantee extends to papers. *See Vance*, 591 U.S. at 795-96. In recounting the ruling in *Burr*, the Court explained that the constitutional right to compel a witness's attendance extended to requiring the witness to bring material papers. *Id.* That discussion concerned the history of criminal process in a case about a state grand jury subpoena for the President's private records. The Court did not decide a state defendant's right to obtain agency records through an APA action, but its account of that ruling contradicts a categorical distinction between witnesses and documents.

Other courts have likewise treated documentary subpoenas as a means of exercising compulsory process rights. The Fourth Circuit, for example, has explained that Federal Rule of Criminal Procedure 17(c), which authorizes

subpoenas for documents, implements the Sixth Amendment guarantee of process to secure favorable evidence. *See In re Martin Marietta Corp.*, 856 F.2d 619, 621 (4th Cir. 1988). A defendant seeking documents under that rule must satisfy requirements of relevance, admissibility, and specificity; privilege remains a ground for withholding protected material. *Id.* at 621-22. Those requirements regulate the exercise of the right. They do not place documents outside it.

The Massachusetts Supreme Judicial Court has taken the same view. It has recognized a defendant's "unquestioned right, under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights, to obtain relevant evidence that bears on the question of his guilt or innocence or which otherwise helps his defense." *Commonwealth v. Matis*, 446 Mass. 632, 633-35 (2006) (quoting *Commonwealth v. Mitchell*, 444 Mass. 786, 795 (2005)). It has also explained that Rule 17 of the Massachusetts Rules of Criminal Procedure provides a means to secure documentary evidence and other objects from third parties in furtherance of that right. *Id.* That protection extends even to obtaining access to a crime scene in a private residence, subject to the defendant's evidentiary showing and safeguards for the owner. *Id.* at 635-36. The protected ability to obtain defense evidence is not confined to oral testimony.

Even courts that have reserved the precise constitutional question have evaluated restrictions on documentary subpoenas under the Clause rather than

treating the form of the evidence as controlling. *See, e.g.*, *United States v. McGrady*, 508 F.2d 13, 18-19 & n.5 (8th Cir. 1974) (assuming that the Clause applied to a third-party subpoena for documents and finding the restriction erroneous but harmless). While that assumption does not resolve the instant question, it certainly does not suggest that documents are excluded from the Clause's reach. Ultimately, the affirmative bases for including them are the Clause's text and history, the ruling in *Burr*, and the Supreme Court's later reliance on that ruling.

### D. State Courts Consistently Recognize That The Guarantee Reaches Documents

State law reflects the same understanding, whether state courts are applying the Sixth Amendment, construing their own constitutions, or reading constitutional text that addresses evidence directly.

The Illinois Supreme Court has held that the Sixth Amendment encompasses subpoenas for documents, permitting the accused to subpoena police reports before the preliminary hearing, and has since reaffirmed that rule in reversing an order that quashed a subpoena for child-protection records without in camera review. *See People ex rel. Fisher v. Carey*, 77 Ill. 2d 259, 265-70 (1979); *People v. Sauls*, 2022 IL 127732, ¶ 33. A New York court has likewise read the Sixth Amendment's reference to "witnesses" to include documents. *See People v. Hendrix*, 12 Misc. 3d 447, 452 (Sup. Ct. 2006).

States whose constitutions track the Sixth Amendment's language have read their own guarantees the same way. The New Jersey Constitution, which secures process for obtaining witnesses in terms identical to the Sixth Amendment's, protects the right to compel both the attendance of witnesses and "the production of documents and other material." *In re Farber*, 78 N.J. 259, 274 (1978). Alaska and Pennsylvania have construed their analogous provisions to reach documents notwithstanding their reference to witnesses, including records bearing on an informant's bias and a complainant's psychotherapy records. *See Braham v. State*, 571 P.2d 631, 644-45 & n.19 (Alaska 1977); *Commonwealth v. Lloyd*, 523 Pa. 427, 432-33 (1989); *Commonwealth v. Davis*, 543 Pa. 628, 632-33 (1996). Appellate courts in Maryland and Oregon have done the same under both their state constitutions and the Sixth Amendment. *See Davies v. State*, 198 Md. App. 400, 419-20 (2011); *State v. West*, 250 Or. App. 196, 203-04 (2012). In Ohio, whose guarantee speaks specifically of procuring the attendance of witnesses, an appellate court recently rejected the same distinction between attendance and production that the district court drew here. *See State v. McFarland*, 2026 WL 699932, at *2 (Ohio Ct. App. Mar. 12, 2026). Recognizing that documents are covered has not displaced the usual requirements; courts in these states have denied relief where the accused failed to show materiality or where the error was harmless. *See Braham*, 571 P.2d

at 645-48; *West*, 250 Or. App. at 203-04. But none has treated the form of the evidence as placing it outside the guarantee.

Other state constitutions explicitly endorse the point in their text. The Massachusetts and Virginia guarantees discussed above remain in force, and New Hampshire and Vermont adopted similar language, securing the accused's right "to produce all proofs" favorable to him or "to call for evidence in his favor." Mass. Const. pt. 1, art. XII; N.H. Const. pt. 1, art. 15; Va. Const. art. I, § 8; Vt. Const. ch. I, art. 10. Consistent with that text, the Supreme Judicial Court reads article 12, together with the Sixth Amendment, to protect a defendant's right to obtain relevant evidence that helps his defense, including, through Rule 17, evidence held by third parties. *See Matis*, 446 Mass. at 633-35.

Across those jurisdictions, the right to compel favorable evidence does not turn on whether the evidence is spoken or written. The district court's contrary rule departs from that understanding.

## II. <u>THE DISTRICT COURT'S REASONING RELIED ON A FAULTY UNDERSTANDING OF THE RELEVANT AUTHORITIES</u>

In holding that the Clause applies only to witness testimony, the district court relied on two sets of authorities. But neither supports its proffered rule. First, in *Ritchie*, the Supreme Court reserved the compulsory process question rather than resolving it against the accused. Second, this Court's decisions describing the right in terms of testimony addressed only the evidence at issue in those cases.

### A. The Supreme Court Reserved The Compulsory Process Question In *Ritchie*

An unresolved constitutional question is not a holding against a defendant. Yet the district court relied on the Supreme Court's statement that it had "never squarely held" that the Compulsory Process Clause guarantees discovery of witness identities or production of exculpatory evidence. (Add. 6 (quoting *Ritchie*, 480 U.S. at 56)). In context, that statement simply reserved the question; it did not establish that documents fall outside it.

In *Ritchie*, the Supreme Court considered a defendant's request for access to confidential child-protection records. 480 U.S. at 43-45. In addressing his compulsory process claim, the Court identified *Burr* as the earliest significant analysis of the Clause and described it as recognizing Burr's right to subpoena evidence from President Jefferson. *Id.* at 55. The Court then noted that its own decisions had not squarely resolved a right to discover witnesses' identities or compel exculpatory evidence, while citing its decision in *Nixon* as support for production. *Id.* at 56. The Court then proceeded under a due process analysis because that doctrine supplied an established framework for resolving the claim. *Id.*

The posture of *Ritchie* explains that choice. Ritchie had served a subpoena on Children and Youth Services, a Pennsylvania agency that investigated suspected child abuse, and the agency refused to comply because a state statute made its records confidential. 480 U.S. at 43. The Pennsylvania Supreme Court apparently

read the Clause to give the accused "the right to have the State's assistance in uncovering arguably useful information, without regard to the existence of a state-created restriction—here, the confidentiality of the files." *Id.* at 55. The records were thus held by an agency of the same State that was prosecuting Ritchie, and his claim was that the State had to open its confidential files to him. The Court had an established framework for that claim: "the government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." *Id.* at 57. Because the custodian was part of the prosecuting government, due process could resolve the request without any decision about the reach of the Clause.

While the Court stated that compulsory process afforded no greater protection than due process in that setting, it did not establish that the Sixth Amendment has no application to documents. *See id.* at 56. The Court expressly declined to decide how the compulsory process and due process guarantees differ, and resolved the claim on the facts before it. *Id.* That reasoning cannot support categorical exclusion of documentary evidence from the Clause.

The Court's statement that compulsory process provides "no greater protections in this area than those afforded by due process" must be read in light of that posture. *Id.* "[T]his area" was the one the Court had just described: claims "such as those raised by Ritchie," which the Court "traditionally has evaluated . . .

under the broader protections of the Due Process Clause." *Id.* (citing, among other decisions, *Brady v. Maryland*, 373 U.S. 83 (1963)). Those are claims that the government must disclose evidence in its own possession. In the same paragraph, the Court declined to decide "whether and how the guarantees of the Compulsory Process Clause differ from those of the Fourteenth Amendment," and it confined its conclusion to the view that, "on these facts, Ritchie's claims more properly are considered by reference to due process." *Id.* The statement thus compares the two guarantees where the evidence is in the prosecuting government's hands. It says nothing about a custodian that owes the defendant no duty of disclosure at all.

The difference between the two guarantees matters here because the district court rejected the due process claim on the ground that the Department did not prosecute Mr. Rivera and therefore owed him no disclosure duty under *Brady*. (Add. 4). Whether an accused may affirmatively seek process to obtain evidence from a non-prosecuting custodian presents a question that a ruling about the prosecutor's disclosure obligations does not answer. The Supreme Court did not address that question in *Ritchie*.

Reading *Ritchie* as the district court did therefore produces a result that *the Court did not contemplate in Ritchie*. The district court read *Ritchie* to support limiting compulsory process to testimony, and it held that the absence of a prosecutorial disclosure duty defeated the due process claim. (Add. 4, 6). Together,

those rulings leave a state defendant with no constitutional claim to documents held by a non-prosecuting federal agency, under either the Fifth or the Sixth Amendment. *Ritchie* addressed the opposite configuration. There, due process supplied a remedy because the custodian was part of the prosecuting government, which made it unnecessary to decide what compulsory process independently requires. 480 U.S. at 56-61. Where due process does not reach the custodian, the question *Ritchie* reserved can no longer be avoided, and *Ritchie* does not answer it.

### B. This Court Has Not Decided Whether The Clause Reaches Documents

This Court's references to witness testimony likewise do not exclude other evidence. The decisions the district court cited concerned subpoenas for federal agents to testify, failure to obtain a foreign witness's attendance, and alleged interference with a witness's testimony. *See Crater*, 93 F.4th at 589-90; *United States v. Filippi*, 918 F.2d 244, 247 (1st Cir. 1990); *United States v. Hoffman*, 832 F.2d 1299, 1303 (1st Cir. 1987). In each, this Court described the right in terms of the evidence sought in that case. It did not hold in any of them that a witness may be compelled to testify but cannot be compelled to produce a document.

This Court has also applied the Clause to documentary evidence, if tangentially. The Clause, this Court has explained, "provides criminal defendants the right to present witnesses *and evidence* in their defense." *United States v. Levy-Cordero*, 67 F.3d 1002, 1012 (1st Cir. 1995) (emphasis added). In *Levy-Cordero*,

the district court had excluded an alibi proffer consisting of six witnesses and "extensive *documentary evidence*, including travel agency records, bank card charge records, photographs," and other records. *Id.* (emphasis added). This Court held that the evidence should not have been excluded without a hearing on its content and reliability, and remanded. *Id.* at 1014-15. True, that decision concerned the presentation of evidence already in the defendant's hands, not its acquisition by subpoena, and the conviction was later affirmed because the exclusion proved harmless. *See United States v. Levy-Cordero*, 156 F.3d 244, 247 (1st Cir. 1998). Still, this Court treated documentary evidence as part of what the Clause protects.

A defendant must identify an act or omission attributable to the sovereign that caused the loss of material and favorable evidence; and where the evidence was testimony, this Court has framed that requirement in terms of testimony. *See Crater*, 93 F.4th at 589. Failure to make or preserve that showing may defeat a claim even when the evidence sought is within the Clause's scope. *See id.* at 589-90. Recognizing documentary evidence as covered by the Clause's guarantee changes none of those requirements. It just prevents the form of the evidence from foreclosing the inquiry before it begins.

## CONCLUSION

The Compulsory Process Clause does not distinguish between a witness's testimony and a witness's papers, and the district court erred in holding that it does. MACDL respectfully requests that this Court reject that holding and, to the extent the judgment rests on it, vacate and remand for consideration of the remaining issues.

Dated: November 13, 2026

Respectfully submitted,


/s/ Michael T. Packard
Michael T. Packard (No. 1146175)
William H. Locke (No. 1220427)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, Massachusetts 02199
(617) 712-7100
michaelpackard@quinnemanuel.com
williamlocke@quinnemanuel.com

Alexandra Arnold (No. 1205706)
MASSACHUSETTS ASSOCIATION OF CRIMINAL DEFENSE LAWYERS
One Financial Center, Suite 1120
Boston, Massachusetts 02111
(617) 481-0606
aarnold@clohertysteinberg.com

*Counsel for Amicus Curiae*
*Massachusetts Association of Criminal Defense Lawyers*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because it contains 5,011 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Date: November 13, 2026

*/s/ Michael T. Packard*
Michael T. Packard

## **CERTIFICATE OF SERVICE**

I hereby certify that, on November 13, 2026, I served the foregoing brief on counsel of record via CM/ECF.

Date: November 13, 2026

*/s/ Michael T. Packard*
Michael T. Packard